UNITED STATES DISTRICT COURT                                      HO rev draft_5.8.2020
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


        -against-                                                      16-cr-0212 (LAK)


ERICK CANALES,

                     Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM AND ORDER


LEWIS A. KAPLAN, *District Judge.*

        Defendant, who has served approximately eight months of his current twelve months'

sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  For the

reasons set forth below, defendant's motion (DI 1469) is denied.

        Defendant was arrested on April 27, 2016 on charges of narcotics trafficking and

discharge of a firearm in furtherance of the racketeering enterprise and a narcotics conspiracy

charged in the indictment.[1]  He was detained following his bail hearing based on risk of flight and

danger to the community.[2]  On July 22, 2016, defendant pled guilty to a lesser included count of

conspiracy to distribute more than 50 kilograms of marijuana in violation of 21 U.S.C. §

841(b)(1)(C).[3]  On March 22, 2017, this Court sentenced him to twenty-one months' imprisonment

---

[1]        DI 5.

[2]        DI 264.

[3]        *See* DI 448.

and three years of supervised release.[4]

While on supervised release, defendant used marijuana on at least three occasions and removed a marijuana-detecting sweat patch in violation of the terms of his supervised release.[5] Defendant failed to appear for a hearing on those violations, and was arrested and remanded on May 6, 2019.  On June 25, 2019, defendant pled guilty to two specifications of the VOSR memorandum, and the Court sentenced him to time served and reimposed supervised release.[6]

Defendant violated the terms of this supervised release three days later by failing to report to the probation office, among other violations.  On September 10, 2019, defendant was arraigned and pled guilty to one specification of this second VOSR memorandum.  The Court revoked supervised release and imposed a term of imprisonment of twelve months.[7]

I recount this history to underscore defendant's repeated disregard for the Court's orders and the conditions of his supervised release.  For reasons that will become clear, this checkered past is relevant to defendant's current motion.

Defendant asks the Court to (1) reduce his twelve month term of imprisonment to time served pursuant to 18 U.S.C. § 3582(c)(1)(A) and, (2) impose  a term of home confinement for the amount of time left to be served on his existing term of imprisonment.  He argues that compassionate release is warranted in light of the COVID-19 pandemic because social distancing

---

[4]

DI 964.

[5]

See DI 1423.

[6]

Id.

[7]

See DI 1441.

is not feasible in the Metropolitan Correctional Center ("MCC"), where he currently is detained, and his history of asthma.  He argues that the latter exposes him to a higher risk of an adverse outcome should he contract the virus.

Prior to the First Step Act of 2018,[8] a court could consider a reduction in sentence only upon a motion from the Bureau of Prisons ("BOP").  Now, it may consider a reduction "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[9]  Defendant filed his petition with the BOP on March 31, 2020, the same day that he filed this motion.  He conceded that the thirty days had not yet run, but argued that the court nevertheless should disregard the exhaustion requirement.  The government opposed defendant's motion on the grounds that the administrative remedies had not yet been exhausted, that the Court lacked the power to grant the requested relief prior to the lapse of thirty days and, in any case, that a reduction in sentence would not be appropriate on the merits.

On April 7, 2020, the Court heard oral argument on defendant's motion.  The same day, the Court issued an order requiring, in relevant part, that (1) the government inform the Court of any determination the BOP makes on defendant's request for compassionate release, and (2) defendant file any further submission in support of his motion by April 16, 2020.[10]

On April 13, 2020, the government informed the Court that the BOP had denied

---

[8] Pub. L. No. 115-291, 132 Stat. 5194.

[9] 18 U.S.C. § 3582(c)(1)(A).

[10] DI 1476.

4

defendant's request for a reduction in sentence.[11]  In doing so, the BOP concluded that "defendant's concern about being potentially exposed to, or possibly contracting, COVID-19 dos not currently warrant an early release from his sentence.  In addition, Mr. Canales's age, criminal history, gang affiliation, and the violation of his supervision, also do not make him a good candidate for a reduction in sentence."[12]  Defendant did not submit anything further to the Court in support of his motion.

More than thirty days have elapsed since defendant initiated his request for early release with the BOP.  Defendant's argument that the exhaustion requirement should be excused is therefore moot.  The Court thus turns to the merits of the motion.

As relevant here, a court may grant compassionate release where (1) there are "extraordinary and compelling reasons" warranting a sentence reduction, (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a).[13]  The relevant policy statement provides that extraordinary and compelling reasons exist when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[14]  The Court notes that the question whether it is bound by the

---

[11]

DI 1477.

[12]

*Id*.

[13]

18 U.S.C. § 3582(c)(1)(A)(i).

[14]

U.S.S.G. § 1B1.13, cmt.1(A)(ii).  The policy statement includes a "catch-all provision," which, as written, permits only the BOP director to determine whether there are

Sentencing Commission's ("USSC") compassionate release policy statement is a much debated question and thus so too are the grounds on which the court may grant relief a case like this.[15]  But it is unnecessary to resolve the issue because defendant would not prevail even on the view of the impact of the policy statement most favorable to him.

The COVID-19 pandemic unquestionably is serious.  It has paralyzed the nation and affected our society in unprecedented ways.  But while the global health crisis itself is extraordinary, defendant in order to prevail must demonstrate that there are extraordinary and compelling reasons relevant to his own circumstances that warrant a sentence reduction.  He has not done so.

Defendant is 26 years old and therefore outside the age groups deemed most at risk of developing severe illness from the virus.  He is not presently sick nor, apart from his history of some asthma, suffering from any serious underlying medical conditions.   His motion for compassionate release therefore hinges entirely on his history of asthma.

---

"extraordinary and compelling reasons" for compassionate release other than those enumerated in the other provisions.  *Id*. cmt.1(D).  In light of the First Step Act's procedural change, several district courts have considered whether the catch-all provision nevertheless grants the court the same authority as that given to the BOP director.  *See, e.g.*, *United States v. Daugerdas*, No. 09-cr-581 (WHP), 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020); *United States v. Lisi*, No. 15-cr-457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020).  However, the Court need not consider whether it has such authority.  Defendant argued only that his medical condition was an extraordinary and compelling reason justifying an early release.  DI 1471 at 3, 12. Moreover, for reasons explained below, even if the Court had the authority to grant release on that basis, it would not find that there are sufficient reasons to grant the motion.

15

*United States v. Asaro*, No. 17-cr-127 (ARR), 2020 WL 1899221, at *4 (E.D.N.Y. Apr. 17, 2020) ("Some district courts have concluded that the court may make an 'independent assessment' of whether 'extraordinary and compelling reasons' for release are present, looking to the Policy Statement only for 'guidance.'") (collecting cases) (citations omitted).  *But see United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (describing the Policy Statement as "helpful in defining a vague standard" and concluding that its "descriptions of 'extraordinary and compelling reasons' remain current."); *see also supra* note 14.

6

The CDC has indicated that asthma could be a co-morbidity for COVID-19.[16]  Yet, asthma is a condition of varying degrees.  The record does not suggest that defendant's asthma is severe.[17]  His BOP medical records indicate that he has a history of childhood asthma and that it was characterized it as "resolved" in May 2017 and October 2019.  An ambulance report from April 2018, however, lists albuterol – an asthma medication – as a then-current medication.  March 2019 medical records from Montefiore Hospital indicate that defendant smoked four cigarettes a day and "occasionally smoke[d] cannabis," activities that would be harmful to someone with severe asthma. Moreover, BOP medical records from as recently as March 4, 6, and 9, 202, do not indicate that defendant required any asthma medication.  Not until March 26, 2020 was he again prescribed medication for the treatment of asthma.  As the Court stated during the April 7, 2020 oral argument, taken together, defendant's medical records suggest that he "has a history of childhood asthma, that every once in a while something provokes it, and that, until he was incarcerated, he intermittently has had prescriptions for albuterol, which was prescribed again recently.[18]  The record therefore does not support a finding that defendant's history of asthma is a "extraordinary and compelling" reason to reduce his sentence.  Defendant's application therefore fails regardless of the view taken of the USSC Policy Statement's effect.

Further, although the defendant is at risk of contracting COVID-19 if he remains

---

[16]

CDC, *People with Moderate to Severe Asthma* (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

[17]

Due to their sensitive nature, defendant's medical records have not been posted on the docket.

[18]

Tr. 10:23-11:4.

7

detained at the MCC, he would be at risk even if he were to be sentenced to home confinement.[19] This is particularly true given the defendant's repeated indifference to the Court's orders and the Court's resulting distrust that defendant would adhere to the terms of home confinement. Moreover, the Section 3553(a) factors weigh against sentence modification.  As detailed above, the "the history and characteristics of the defendant" dispel any notion that the public interest would be well-served by a reduced sentence.[20]  Nor would  granting defendant's motion "promote respect for the law" or "provide just punishment for the offense."[21]  Indeed, defendant responded to his June 2019 sentence of time-served for his first violation of supervised release by violating the reimposed terms of his supervised release within seventy-two hours.

       For the foregoing reasons, defendant's motion (DI1469) is denied.

       SO ORDERED.

Dated:      May 9, 2020

                        /s/      Lewis A. Kaplan

                                Lewis A. Kaplan
                       United States District Judge

---

[19]
     Data as of May 5, 2020 for the zip code where defendant proposes to reside indicates an infection rate of approximately 2.62%, which is 34% greater than the city average. ProPublica, *Coronavirus in New York City: How Many Confirmed Cases Are Near Me?,* https://www.propublica.org/graphics/covid-nyc.

[20]
     18 U.S.C. § 3553(a)(1).

[21]
     *Id*. § 3553(a)(2).